New York State Rifle and Pistol Association v. City of New York We'll wait until the crowd empties, then I will turn to Appellant to take the podium. You may do so. You may do so. Thank you, Your Honor, and may it please the Court. Erin Murphy on behalf of the plaintiff's appellants. The City of New York prohibits its residents from transporting an unloaded firearm locked in a container separate from its ammunition to out-of-city homes where they would keep them for the core Second Amendment purpose of self-defense and to out-of-city firing ranges where they would use them to hone the safe and effective exercise of that right. Isn't it true that at an out-of-city range they could rent a gun when they were there? The very own gun that they own? The very similar to the one they own? There's actually absolutely nothing in the record in this case about that possibility. The city never even mentioned the possibility of rental in the district court and submitted zero evidence on it. But even taking the assumption that you could rent a similar gun at a firing range outside of the city, that's not the same thing as being able to practice with the actual weapon. But they have the right and the ability to practice with their actual weapon in the borough in which they reside or in other places in the city, right? That's right. So if there is a right, there's a right to have a gun for protection, and they have that, right? They have their guns. Within the city. They can't take them to their out-of-city homes. There's only one person who has an out-of-city home. We'll talk about that separately. We're talking now about firing ranges, right? Right. Okay. So they have the right to have the gun. They have the right to take the gun. You say it's a part of that right to hone your skills, and they have that right. So what is the burden on their Second Amendment rights with respect to firing ranges that they can't go to California if they feel like it with their gun? Sure. I mean, I think the question is, is it substantially burdensome to prohibit you from going to any of the shooting ranges outside the city? Of course, they could go to California, right? They just can't go from their house to the Hudson River. They can't take their firearm. Wait, wait, wait. Not necessarily so. If they have a firearm that is licensed to be owned in some other state and they keep it in that other state, no one says they can't take that gun to the firing range in another state. The problem is they can't transport it within the city. I mean, that may be not much of a difference. Right. I mean, if they have a firearm that they possess in the city of New York for the purpose of self-defense at their home in New York, they can't take it outside the city. Explain to me why it is important to be able to practice at a firing range in New Jersey rather than one in Staten Island. I think the real question is, does limiting so severely how many firing ranges you can go to constitute a burden? And I would suggest, you know, I think it's the same analysis. But excuse me, isn't the point the ability to practice? That's what ties the firing range right to the gun in the home right, yes? Sure, but here's how I would think about it. I mean, if the city of New York passed a restriction that said you can't leave city limits to get an abortion, I think that the court would say the city had to justify that. They couldn't simply say, well, you can get them in the city, so it doesn't matter that we're burdening your right to get them at all the other places where you previously could. Aren't the only states that restrict or would even think of restricting the right to leave the state to have an abortion the ones that don't let you have an abortion in the state? I mean, that's not a very significant issue, right? But it's precisely the problem. If what you're trying to do is ensure that people have limited access to a constitutional right, then typically the way courts approach those kind of laws is by saying, okay, you need to come forward with a justification for that. I'm suggesting there's a freestanding constitutional right to go to a firing range to practice that is distinct from the right to have the firearm in the home. I thought your argument was that the right to practice is an adjunct of the right to have the weapon for self-defense. And the only reason you have any right to go to a firing range is because that enables the right to have the gun for self-protection. Am I wrong about that? I think whether you consider it an adjunct right or not, it's still at the core of the Second Amendment. And I think that's clear from Heller itself, that specifically talks about learning the effect of use as a firearm as part and parcel of keeping and bearing a firearm. Speaking of abortion, is there any argument here at all that the city over-regulates firing ranges or makes it unusually difficult to have firing ranges in the city or is either subjectively or objectively, either subjectively intending to interfere with the right to hone your firearm skills or is objectively making it difficult for people to accomplish that goal? We haven't proceeded in the case on the kind of— Is that even alleged? There are only eight firing ranges in the city for a city of this size. Now, that is a very small number to expect everybody who wants to be able to practice within the city to do so. Is there any allegation that the city is either in intent or effect enacting regulations that unduly restrict the ability to go to firing ranges in the city? As I understand the city's justification for the law, it's in part premised on the notion that the law will deter people from going to firing ranges. I mean, because if it's not, then the city's law is downright counterproductive because it actually encourages people to transport firearms more frequently within city limits than they otherwise would. So if the city thinks that there's not going to be any corresponding decrease in people going to firing ranges as a result of this law, then I don't know what this law is doing at all since all it does is say you should spend more time driving around within the city with a firearm in your car than you otherwise would if this law wasn't in place. So to the extent that this law is supposed to be targeting the idea that there's this distinct public safety interest in prohibiting the transport of an unloaded firearm locked in a container, which basically every other jurisdiction allows. I mean, federal law allows this. We don't know of any other jurisdiction. We've looked at San Francisco, Chicago, D.C., kind of the jurisdictions that have the most restrictive laws. No one else says you can't leave the city limits to go to a firing range. They just regulate the manner in which you transport your firearm. You seem to be insinuating that the city had somehow limited the number of firing ranges that exist in the city. In your brief, you called it a state-sanctioned oligopoly. I didn't see any evidence in the record, although perhaps I missed anything, suggesting that the city was denying applications, for example, to operate firing ranges. Are you suggesting that the city has restricted these in some way? No, I mean, that's not really the core of our argument here. It's not that the city is affirmatively prohibiting or standing in the way of firing ranges being existent. We don't think that it would matter for purposes of this case. The problem is the city needs a justification for saying you can't go elsewhere. But this depends on whether there's any kind of substantial infringement or limitation on the Second Amendment right, and I'm still trying to find that. Is there any allegation in the complaint that if I own a firearm in the city of New York and I want to go to a firing range that I have to make reservations three weeks in advance? There is an allegation. Five days. What we put forward as our evidence is of the eight firing ranges, to the best of our knowledge, only one of them is actually open to the public without requiring you to become a member. Wait, wait, wait. Let's take these things one step at a time. Now we're getting to this membership requirement. If you want to play golf, you have to pay a fee to use the greens, right? If you want to join a gym, you pay a fee to join a gym. Is there any allegation, argument, evidence that these clubs are exclusionary or that the fees that they charge are such as to deter a reasonable so that, you know, the New Jersey firing ranges are all free. Anybody can go and shoot for nothing. But in the New York ones, you have to pay a fee that is substantial in some way? There were no disputes resolved below about the extent to which they're open to the public. But was there any evidence or allegation? I know there weren't any fact findings below. Is there any evidence or even allegation that these private clubs are like, you know, some whites only, rich people only, Mar-a-Lago, you have to pay $1,000 to get in and know somebody to be a member, or are they public facilities that charge a fee for their use? There's not allegations that they're sort of, you know, that the particular fees that you would have to pay are themselves unconstitutional. But, again, that's because, you know, our art. Or are they exorbitant? There's not evidence in the record as to what the fees actually are at the other ranges. So the membership private club thing is a red herring, right? If I want to go to the club. Maybe I'm wrong. Tell me if I'm wrong. I don't think so. If I want to go to a firing range in which I have to become a member, is there any allegation or evidence that I can't just go there, pay whatever they charge, and then I'm a member? There's not evidence about what it takes to become a member at a club. So then what is this argument about not open to the public? Are these not public facilities of the sort that are required not to discriminate by discrimination laws and so on, that they're simply public facilities? They may charge a fee. They may call that a membership fee. Is there anything here to suggest that any citizen of New York, any resident of New York, any non-New Yorker who goes to one of these facilities is going to be excluded from it for any reason other than they charge a fee to use the facility? There's not, Your Honor. But once again, that's because our argument is it doesn't matter. The city still needs to justify it. If it wants to basically prohibit people from going to out-of-state firing ranges, it needs a reason for doing that. This is, after all, constitutional conduct. We're still looking for the substantial burden, and I'm having trouble seeing it because the right in question, the core right in question, is the right to have the firearm for self-protection. It makes perfect sense to me that that encompasses a right to practice and to learn how to use the gun for self-defense. I have no problem with that. But that doesn't say that the right to use a firing range is a freestanding right such that if there is a restriction on your ability to go to California or British Columbia or God knows where or New Jersey and use a firing range there, that that is a substantial burden on your Second Amendment right. It seems to me the question is, is there any restriction on the ability to have, use, learn how to use a firearm for self-protection? And I'm not seeing where that is if there are plenty of facilities and ability for people freely to accomplish that goal. I think that kind of flips and gets at substantial burden analysis in a way that's really not consistent with the way it works. The question isn't, you know, is there at least some little bit of your right left. It's did you take away some of the things, you know, I have a constitutionally protected right to engage in firearm practice and the city wants to put in place a law that is designed to deter my ability to do so. Normally you can practice. The question you have focused on that the regulation focuses on is can you transport your gun from the premises that you purchase it to protect to wherever you want to, to practice, right? I mean the city doesn't prohibit you from going to New Jersey to practice. It's that you may not transport your gun outside of city limits to practice. Isn't that correct? It prohibits you from practicing with your own firearm. Which is different than prohibiting you from practicing. Isn't that right? It is, but I don't think it's different in a way that matters for purposes of the Second Amendment because the firearm that you're going to use should you need to use a firearm for self-defense is the one that you possess. And again, the city put in no evidence, didn't even mention the existence of rental options at firing ranges out of the city in the district court below. So we have no basis to know if the same models of firearms are available, how many of them are available, any of that. So to the extent the court thinks that it's relevant whether you can rent a firearm at the firing range that's two miles away in New Jersey instead of going all the way up to the firing range in the Bronx, I don't think on this record that the judgment below could be affirmed on that basis. Do you have any basis for thinking that it's not accurate? I mean just in terms of looking around the world at how firing ranges work. I mean I have no basis to believe that there's such a wide range of firearms available for rental at places that you're sure to have no impact on your ability to practice with the same type of firearm that you possess at home anytime you go to an out-of-city range. I don't think that's the kind of thing that would require evidence. I really don't think that you can just kind of assume that that's available at firing ranges outside the city. You're in essence, though, you have framed your position as if the city prohibits you from practicing outside of the city. And I question whether that is an accurate statement. They prohibit you from taking your firearm outside of the city to practice, right? I think that's correct. But I mean to be clear, the district court's reasoning below in this case, the district court said it didn't matter if there were no firing ranges within city limits, this would be constitutional. So the district court wasn't asked to consider and did not on its own consider any question of whether you have some ability to engage in target practice with a completely different firearm at a shooting range outside of the city. So this just wasn't an issue below and it wasn't remotely relevant to the district court's reasoning since the district court thought it would be perfectly fine if you couldn't practice anywhere within city limits and that that wouldn't even implicate the Second Amendment basically or at least wouldn't have an intermediate scrutiny problem. All right, let's stop here. I know you've well exhausted your time, but you still have two minutes for rebuttal and we'll hear from the city. Thank you. Good morning, Your Honor. Susan Paulson on behalf of the appellees. Your Honors, I'd just like to emphasize several points that this panel just brought out in my adversary's argument of what there is no evidence or allegations of in this case. None of the plaintiffs even contend that they can't maintain proficiency with their handguns. And the core right, as this court noted, is the right to have and bear arms in the home for self-defense and some courts have understood that this right encompasses the ability to maintain proficiency with those handguns. And there is, as I just stated, no evidence or allegations that they can maintain proficiency with their handguns there. There's also no evidence or allegations in this case that there were any proprietors who wanted to open a small arms range in New York City that were unable to do so, that were unable to obtain the necessary authorizations or permits and couldn't operate their range. There's also no evidence or allegations in this case that the plaintiffs could not get range time, that there were too many people seeking to use these small arms ranges and it was for some reason inaccessible to them or not accessible at the times in ways that they wanted to use them. And then, as Your Honors pointed out in your questions to my adversary, there's no evidence or allegations in this case that the plaintiffs can't join any of these clubs. There is one club that does not require membership, the others require membership, and the Richmond Borough Club permits non-members to participate in their weekly shooting events. So there's no evidence or allegations that these plaintiffs were in any way impeded or prohibited from joining any of the eight small arms ranges that exist in New York City. Ultimately, because of this, there is no, this rule that they are challenging places no restriction on the plaintiff's ability to keep and bear arms in their home for self-defense, to use these guns, to learn how to use these guns, or in any way impinges upon the poor right. I understand that argument very well, but suppose we were to disagree and think that there is some substantial justification required. I'm having a little trouble understanding how you would win on that theory, given that the city permits a Staten Island or Bronx resident, they might have a firing range close to their house, but there's nothing that keeps them from going all the way from Staten Island to the Bronx, or all the way from the Bronx to Rockaway, or wherever there is a firing range, with their unlocked, secured, with their locked, unloaded, secured firearm. But if you live in Washington Heights, you're not allowed to carry the gun in the same condition from your home a few blocks to the George Washington Bridge. Now, I don't know what New Jersey thinks about this, or whether they allow out-of-staters to come shooting at their ranges or not, but that's not the issue here. Assuming they do, then what is rational about the city saying you can transport your gun all over the city for purposes of going to a firing range, but you can't go across the George Washington Bridge to a firing range in Fort Lee? Sure, Your Honor. Your Honor, this case is about the restrictions on a premises license. The premises license allows you to have the license handguns in the address on the license. It has a limited accommodation in that restriction to allow the license holders to maintain proficiency in the use of firearms. In order to enforce, to monitor and enforce the limitations upon that, the NYPD has determined that in order to facilitate the monitoring enforcement, they are limiting that limited exception to the requirement to keep the handgun in the licensed premises to the eight authorized ranges. This doesn't necessarily mean that you're going to the closest range to your home. It means that you're going to a limited number of ranges, and it allows them to monitor and enforce the boundaries of this limited exception because they know there are only eight ranges. They know where they're located. They know what their hours are. They're able to inspect their records to determine, because you have to sign in essentially to use the facilities. So this allows them to make sure that these handguns, which are restricted to the address listed on the license, are only taken outside the licensed premises for permissible purposes. And by restricting it to authorized ranges, this allows the police department to enforce that restriction. It is not, as my adversary contends, about deterring people from using ranges or deterring them from leaving. It's making sure that when they avail themselves of this limited exception to the requirement that they keep the gun in their home, that they're doing so for permissible purposes and going to permissible destinations. So it's not fail-safe, of course. I mean, if I'm there I am in Queens and my house is in the Bronx and I've got my firearm with me and I say I'm going to the firing range in Queens, I assume the officer doesn't pull out Google Maps and say, oh, no, you're not on the way, but at least it would be possible to check after the fact and see whether I did go to the firing range and practice, or at least it would be possible to say, but that place is closed on Sundays and you're a member and you should know that. That's exactly right, Your Honor. It certainly is not fail-safe. But as I said, as articulated in the affidavit of the former commanding officer of the license division, this facilitates the enforcement of the limitations on the license, which would otherwise be unmanageable for them. Your adversary argues that the restrictions facially discriminate against interstate commerce and violate the Dormant Commerce Clause by disadvantaging firing ranges just across the river. Why are they wrong? Well, Your Honor, it doesn't facially discriminate because it says that they're only permitted to go to authorized ranges. In effect, the only authorized ranges are in New York City. To the extent that it has an effect on interstate commerce, this effect is minimal. The law neither prohibits the plaintiffs, as has been previously discussed, from patronizing ranges outside the city, nor requires them to patronize city ranges. And the motivation for the rule is public safety, and the plaintiffs don't even contend that there's any protectionist reason behind this. The Dormant Commerce Clause is concerned with protectionism, and the motivation is important and is closely examined. So to the extent that there is a discriminatory effect on interstate commerce, it's minimal here and it's unrelated to economic protection. It's related to a legitimate local purpose. That is, you're not trying to promote the New York City ranges over the New Jersey ranges. Certainly not, Your Honor. The purpose of the law is to be able to control the presence of restricted handguns in public, and as I just previously mentioned, this is how this rule does so. The purpose has no way to create an economic benefit for local businesses over businesses outside the state, and it neither requires them to patronize those businesses nor prohibits them from patronizing the out-of-city businesses. The effect on interstate commerce is minimal, and certainly it doesn't unconstitutionally burden and violate the Dormant Commerce Clause. Thank you, Your Honor. If there are no further questions, I would ask this Court to affirm the District Court. Thank you. I can just make three quick points. First, I didn't hear the City offer any justification for why it prohibits people from taking their spherum safely to a second home outside of the City. There really just is no logical justification for doing that. Second, the City itself didn't identify this law as being based on a public safety interest. They instead identify it as being basically an administrative ease rationale. It might be easier for us to know if you're lying when you say you're going to an in-City firing range than an out-of-City firing range. I don't see why the City can't just call up the out-of-State firing or out-of-City range and say, hey, what are your hours because this person told me they're going there? All the same tools you would use to find out if somebody's telling the truth in-City are just as available out-of-City. The City could easily keep a list to cross-reference against the hours and places that are available so that they know when someone says they're going to New Jersey, hey, that range is closed on Sundays. And finally, the City admits that this law facially discriminates against interstate commerce. Under the Supreme Court's jurisdiction, you don't have to ask about the effects at that point. Facial discrimination against interstate commerce can be justified only I thought they specifically denied that it facially restricts interstate commerce because they say it doesn't have anything to do with where you do your business. It's just how you transport weapons within the City of New York. No, what I take them to say is that that's a question about why it facially discriminates, but it on its face says you can only engage in this form of commerce inside the City, not outside, which they agree that their restriction has the effect of saying if you want to engage- Has the effect of doing that? I mean, on its face. It's not just the way, I mean, because they have interpreted authorized firing ranges to only include those that are within the City, on its face, this regulation says if you want to engage in this commerce, you have to do so within the City limits, not outside the City or outside the State. But they argue that there is no protectionist basis for this, that it was public safety and ease of administration. And when you are dealing with facial discrimination against interstate commerce, what the Supreme Court has said is it's virtually per se invalid, except in the narrow class of cases where under the most rigorous scrutiny, a city can demonstrate that it has no other means of advancing its interests than what it has done here. I don't think that just asserting, you know, it'd be easier for us to enforce our laws if we make them exceptionally restrictive is the kind of justification that would satisfy the most rigorous scrutiny of showing that the City has no other means to advance an important government interest. Thank you. Thank you both. We'll reserve decision.